IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | |
|---|---|
| Barbara Rose | Consolidated Case Nos. |
| | 07 CV 3196 |
| and | 07 CV 3604 |
| Robert L. Rose, | MEMORANDUM OPINION |
| | AND ORDER |
| Plaintiffs, | JUDGE JACK ZOUHARY |
| -vs- | |
| Truck Centers, Inc., et al., | |
| Defendants. | |

#### INTRODUCTION

This is a product liability action involving a single vehicle tractor-trailer accident which occurred on May 6, 2006 on southbound Interstate 75 in Toledo, Ohio.  Plaintiffs Robert and Barbara Rose allege the steering on their vehicle "gave out" and caused the accident.

Defendant TRW Automotive (TRW) filed a Motion for Summary Judgment (Doc. No. 96). TRW claims that Plaintiffs' expert, Philip Smith, is not qualified to testify on issues of product defect and causation and further that Smith's opinions are unsupported by the facts of this case.  Plaintiffs opposed the Motion (Doc. No. 102), claiming that the testimony of their expert is admissible under

Federal Evidence Rule 702 and that his testimony creates a genuine issue of material fact precluding summary judgment.

A hearing was held on Defendant's Motion with the Court sending out questions in advance for counsel to be prepared to discuss (Doc. Nos. 111 & 112). At that hearing, Plaintiffs conceded that without admissible expert testimony from Smith, summary judgment would be appropriate for Defendant (Tr., pp. 1-2).[1]

## BACKGROUND

Plaintiff Robert Rose was the driver of the truck, and his wife, Barbara Rose, was riding in the sleeper compartment of the truck at the time of the accident. The truck was a 1997 Freightliner with 970,000 miles in May 2006 when the accident occurred. From October to December 2005, maintenance was performed on the truck to repair damage from a previous accident. During the repairs, a remanufactured steering gear produced by TRW was installed by Truck Centers. The truck remained at Plaintiffs' home in Stanton, Kentucky until Plaintiffs embarked on a series of trips in May 2006.

Plaintiffs claim the accident occurred because the truck's steering "gave out" such that, although Robert was turning the steering wheel rapidly, there was no response by the wheels of the truck. This phenomenon is also referred to as "free-wheeling." Plaintiffs allege a steering gear malfunction, resulting in a loss of fluid, caused the loss of steering control. Plaintiffs had not experienced any steering problems until this accident. Robert Rose had driven the truck some 6,000

---

[1] Plaintiffs also named Truck Centers and Freightliner as Defendants, but each of them was dismissed when their respective Motions for Summary Judgment were unopposed (Doc. Nos. 82 & 98).

miles with the remanufactured steering gear without incident. He admits he inspected the truck before leaving Ontario, Canada the morning of the accident, and observed no problem with the steering gear.

Following the accident, the truck was towed to the Toledo Police Department's impound lot, and then to a Freightliner dealership in Toledo. From there, the truck was towed to Plaintiffs' home in Stanton, Kentucky, arriving there one week after the accident.

Plaintiffs' expert, Philip Smith, testified that the likely cause of the accident was that the TRW remanufactured steering gear was defective. Specifically, Smith testified the accident was caused by the following series of events: (a) TRW failed to properly torque the valve housing bolts that seal the steering gear; (b) as a result of road vibrations the bolts became loose or "backed out"; (c) power steering fluid was lost; and (d) Robert began free-wheeling and lost control of the truck, causing the truck to strike the median barrier.

Photographs produced by Plaintiffs dated July 8, 2006 show that at least one of the valve housing bolts was, at that time, completely separated from the steering gear (TRW Ex. 9). Smith inspected the truck and steering gear on November 10, 2006 at Plaintiffs' home in Kentucky. At that time, unlike the photographs from July, all of the bolts were threaded into the steering gear. During the inspection, Smith noted and recorded the condition of the steering gear and the number of revolutions required to completely remove the bolts from the steering gear and used this information to generate his expert report.

## STANDARD OF REVIEW

Pursuant to Federal Civil Rule 56(c), summary judgment is appropriate where there is "no genuine issue as to any material fact" and "the moving party is entitled to judgment as a matter of law." When considering a motion for summary judgment, the court must draw all inferences from the

3

record in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The court is not permitted to weigh the evidence or determine the truth of any matter in dispute; rather, the court determines only whether the case contains sufficient evidence from which a jury could reasonably find for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986).

## DISCUSSION

Plaintiffs set forth three claims: common law negligence, common law product liability, and a statutory claim under the Ohio Product Liability Act, R.C. § 2307.71 *et seq.* (OPLA).

Plaintiffs do not oppose dismissal of the common law claims of negligent manufacture and product liability because they are superseded by OPLA. R.C. § 2307.71(B) ("Sections 2307.71 to 2307.80 of the Revised Code are intended to abrogate all common law product liability claims or causes of action."); *Tompkin v. Am. Brands*, 219 F.3d 566, 575 (6th Cir. 2000) (holding common law claim of negligent manufacture preempted by OPLA); *Miles v. Raymond Corp.*, No. 5:08 CV 585, 2009 WL 773821, at *7 (N.D. Ohio Mar. 18, 2009) (holding common law claims of negligence and product liability are preempted by the OPLA). Thus, the remaining claim is the Ohio statutory product liability claim.

### Product liability: prima facie case

Plaintiffs advance a theory of manufacturing defect, specifically that TRW failed to properly torque the bolts that seal the steering gear and that subsequent road vibrations caused these bolts to loosen to the point that Robert lost control. In order to succeed under this theory, Plaintiffs must show that: (1) there was a defect in the product at the time it was manufactured and sold; (2) that the defect existed when it left Defendant's hands; and (3) that the defect is the direct and proximate cause of

Plaintiffs' injuries. *Donegal Mut. Ins. v. White Consol. Indus., Inc.*, 166 Ohio App. 3d 569, 576 (2006) (*citing State Farm Fire & Cas. Co. v. Chrysler Corp.*, 37 Ohio St. 3d 1, 5-6 (1988)). TRW contends that Plaintiffs are unable to prove any of the three required elements because their expert testimony is inadmissible.

### Admissibility of expert testimony under Rule 702 and *Daubert*

Plaintiffs' expert, Philip Smith, testified that the probable cause of this accident was: (a) the bolts were not properly torqued; (b) as a result of road vibrations the bolts became loose or "backed out"; (c) power steering fluid was lost; and (d) Robert lost control, resulting in the accident. If Smith's testimony is inadmissible, TRW is entitled to summary judgment because Plaintiffs offer no other expert testimony to establish defect and causation and would fail to carry their burden of proof.

Federal Evidence Rule 702 governs the admissibility of expert witness testimony:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

The party proffering expert testimony bears the burden of proving its admissibility. *Pride v. BIC Corp.*, 218 F.3d 566, 578 (6th Cir. 2000) ("[U]nder *Daubert* and its progeny, a party proffering expert testimony must show by a 'preponderance of proof' that the expert whose testimony is being offered is qualified.").

In *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579 (1993), the Supreme Court held that when faced with a proffer of expert scientific testimony, Rule 702 requires a district court to determine whether the testimony "both rests on a reliable foundation and is relevant to the task at hand." *Id.* at 597. As part of that review, the court must assess "whether the reasoning or methodology underlying

5

the testimony is scientifically valid and . . . whether that reasoning or methodology properly can be applied to the facts in issue," taking into consideration factors such as testing, peer review, error rates, and acceptability in the relevant scientific community. *Id.* at 592-94. *Daubert* thereby sets forth a general "gatekeeping" obligation for trial courts. *Id.* at 597. The district court's gatekeeper function applies to all experts -- specialized, technical, or scientific. *Kumho Tire v. Carmichael*, 526 U.S. 137, 148-49 (1999).

**Smith is not a qualified expert under Rule 702**

Smith professed to be a technical expert in "truck mechanical issues, electronic control modules, driver issues, logs, hiring practices, [and] heavy hauling," in addition to steering gears (Smith Dep., p. 164). TRW argues that under Rule 702, Smith does not qualify as an expert to testify on issues of product defect and causation.

To qualify as an expert under Rule 702, a witness must first establish his expertise by reference to "knowledge, skill, experience, training, or education." District courts, in their assessment of the "reliability" of a proposed expert's testimony, are advised to "determine, [among other things], whether the expert's training and qualifications relate to the subject matter of his proposed testimony." *Smelser v. Norfolk Southern Ry. Co.*, 105 F.3d 299, 303 (6th Cir.1997).

The critical question here is whether Smith is qualified to testify about this product defect and causation. The Court finds he is not so qualified. As the Sixth Circuit noted, "[t]he issue with regard to expert testimony is not the qualifications of a witness in the abstract, but whether those qualifications provide a foundation for a witness to answer a specific question." *Berry v. City of Detroit*, 25 F.3d 1342, 1351 (6th Cir. 1994). In *Berry*, the court delineated by analogy the kinds of

testimony witnesses are qualified to give on the basis of their expertise -- scientific or technical (*id.* at 1349-50):

> By way of illustration, if one wanted to explain to a jury how a bumblebee is able to fly, an aeronautical engineer might be a helpful witness. Since flight principles have some universality, the expert could apply general principles to the case of the bumblebee. Conceivably, even if he had never seen a bumblebee, he still would be qualified to testify, as long as he was familiar with its component parts.
>
> On the other hand, if one wanted to prove that bumblebees always take off into the wind, a beekeeper with no scientific training at all would be an acceptable expert witness if a proper foundation were laid for his conclusions. The foundation would not relate to his formal training, but to his firsthand observations. In other words, the beekeeper does not know any more about flight principles than the jurors, but he has seen a lot more bumblebees than they have.

The Sixth Circuit has excluded similar testimony from mechanics. In *Sigler v. Am. Honda Motor Co.*, 532 F.3d 469 (6th Cir. 2008), a motorist sued his vehicle's manufacturer under a product liability statute. The *Sigler* court affirmed the district court's grant of a motion in limine precluding plaintiff's expert witness, a mechanic, from testifying about accident reconstruction and potential defects in the vehicle because the court concluded the mechanic was not qualified to offer testimony on these issues. *Id.* at 478-79. The court found that "although [the expert witness] appears to be an able mechanic, the substance of his evidence deals with estimating the speed at which [plaintiff's] vehicle was traveling when it struck the tree, a matter of accident reconstruction." *Id.* at 479.

Likewise, in *Elswick v. Nichols*, 144 F. Supp. 2d 758 (E.D. Ky. 2001), the court excluded the testimony of an expert in the field of nursing. The plaintiff in that medical malpractice case developed a post-operative infection during his recovery at a hospital. At trial, plaintiff offered the testimony of an expert in the field of nursing care, which included testimony about a nurse's standard of care for post-operative patients, as well as "her opinion [that] the index of suspicion is very high that this breach led to this man developing the nosocomial [i.e.: hospital acquired] infection." *Id.* at 766

7

(internal quotation marks omitted). The court found the testimony about the standard of care to be admissible because the expert witness was sufficiently qualified to testify about nurses' responsibilities to care for patients. *Id.* However, the court found the testimony concerning causation must be excluded because the expert witness was unqualified on this issue since "causation is outside her knowledge as an expert witness and such testimony would be akin to a beekeeper testifying about the physics of an airplane's flight." *Id.* at 767 (*citing Berry*, 25 F.3d at 1350).

Much like the experts in *Sigler* and *Elswick*, Smith may be qualified as an expert on some issues, but his testimony exceeds the scope of his expertise. Here, Smith is a specialized technical expert. He is a truck mechanic by trade; he is not an engineer. He began his career as a truck driver and later became a mechanic. He is an ASE-certified master technician. He has a diploma from Denver Auto & Diesel College and received some training on TRW steering gears in the mid-1980s. Much of his more recent work experience encompasses overseeing the repair and examination of mechanical systems on fleets of automobiles and heavy trucks and trailers. Smith has never designed or manufactured a steering gear for a truck (Smith Dep., pp. 167-68).

His opinions in this case go far beyond his expertise in the field of maintenance. Smith opines about the cause of the accident: "[T]he cause of this accident was the loss of power steering fluid due to the loose valve housing bolts. With the bolts coming loose, the pressurized fluid would quickly escape leaving the driver without the benefit of power steering" (Smith Expert Rpt., p. 4). He testified the steering gear was defective for "not having the bolts properly torqued" (Smith Dep., p. 165), that vibrations caused the bolts to loosen and back out and that it is "common knowledge" that vibrations loosen bolts (Smith Dep., p. 71). However, Smith was not qualified to offer opinions about whether

8

the steering gear was defective. Smith has not demonstrated that he knows any more about mechanical engineering principles than an average juror. *See Berry*, 25 F.3d at 1350.

What Smith lacks in formal education and training, he does not make up for in experience. His inexperience is evidenced by the lack of testing and, as will be discussed more thoroughly below, the inadequacies of the minimal testing that was completed. Further, he testified he knows of no other instance in which bolts came loose in the manner they allegedly did here (Smith Dep., p. 78).

**Smith's opinion is inadmissible under Rule 702 because it is unreliable**

Reflecting his deficient expertise, Smith's testimony is also inadmissible because it is unreliable under Rule 702 because his testing was not based on reliable methodology. Rule 702 requires expert testimony be "based upon sufficient facts or data." An inquiry of this nature focuses "solely on the principles and methodology, not on the conclusions they generate." *Daubert*, 509 U.S. at 594-95. Expert testimony may not be based on mere speculation. *Id.* at 590. Assumptions must be supported by evidence in the factual record. *See Sigler*, 532 F.3d at 481-82; *McLean v. 988011 Ontario, Ltd.*, 224 F.3d 797, 801 (6th Cir. 2000) ("An expert's opinion, where based on assumed facts, must find some support for those assumptions in the record."). However, "mere 'weaknesses in the facutal basis of an expert witness' opinion . . . bear on the weight of the evidence rather than on its admissibility.'" *McLean*, 224 F.3d at 801 (*quoting United States v. L.E. Cooke Co.*, 991 F.2d 336, 342 (6th Cir. 1993)). TRW argues Smith's opinions are inadmissible because they are based solely on assumptions and guesses rather than established facts.

Smith first inspected the steering gear at Plaintiffs' home in Kentucky in November 2006, some six months after the accident in Toledo. According to his report, at this time he "found that the four valve housing bolts were extremely loose to the point that three of the bolts required slightly more than

9

one turn to completely remove them and the fourth bolt took approximately two and one-half turns to remove it" (Rpt., p. 2). For a point of comparison, Smith obtained an exemplar TRW remanufactured steering gear and loosened the valve housing bolts to the same degree as Plaintiffs' steering gear was at the November 2006 inspection. After doing this, Smith determined that "the input shaft could be rotated 5/8th of a turn before the sector shaft would begin to turn," meaning that "the steering wheel would be rotated approximately 225 degrees before the tractor front tires would begin to move" (Rpt., p. 3).

Thus, Smith's opinions are based on the assumption the bolts were at the exact same degree of looseness at the November 2006 inspection as they were at the time of the accident in May 2006. However, it is undisputed that the July 2006 photograph of the steering gear (TRW Ex. 9) shows the bolts were manipulated *after* the accident and *before* Smith's examination. The July 2006 photo shows at least one of the bolts was completely separated from the steering gear, and not fastened to some degree as it was in November 2006.

Smith's opinion failed to account for this manipulation; thus, his opinion is unreliable because any testing of bolts was unrelated to the condition of the steering gear at the time of the accident. This error goes beyond a "mere weakness" in the factual basis of Smith's opinion, it destroys the factual foundation upon which he rendered his opinion. *See McLean*, 224 F.3d at 801. Smith was seemingly unaware of the manipulation at the time he issued his report (Smith Dep., pp. 14 & 28). In his report and deposition testimony, Smith stated his testing and analysis assumes that the bolts at the time of the accident were in the exact same degree of looseness as they were at the November 2006 inspection (Rpt., p. 3; Smith Dep., p. 48). After Smith was presented with the July 2006 photographs at his

deposition, he conceded that the bolts appeared to have been manipulated prior to his inspection (Smith Dep., pp. 149-51).

In *Early v. Toyota Motor Co.*, 277 F. App'x 581 (6th Cir. 2008), the court upheld the district court's exclusion of a proposed expert opinion that the failure of a truck's dust seal, which led to the truck occupants' carbon monoxide poisoning, was due to the manufacturer's choice of materials for its seal. In that case, the expert did not examine the dust seal until after it had been removed from the truck and did not account for prior possible manipulation of the seal as a result of a previous collision. *Id.* at 586. In addition to finding the proposed expert to be unqualified, the court found the expert's proposed testimony to be unreliable because it was not supported by underlying facts, specifically noting that "while [the expert] opined that the distance between the exhaust leak and the dust seal was between 24 and 48 inches, in fact the distance was nine or ten inches." *Id.*

In *Davison v. Cole Sewell Corp.*, 231 F. App'x 444 (6th Cir. 2007), the estate of Norman Davison brought negligence and wrongful death claims against Home Depot. Norman was shopping at a Home Depot store in Ohio when he was allegedly struck in the head and neck by a metal bracket that was part of a display. *Id.* at 446. As a result, plaintiff claimed Norman suffered personal injuries and ultimately committed suicide. *Id.* The district court granted summary judgment in favor of Home Depot after finding plaintiff's expert testimony inadmissible. Plaintiff's expert opined that the display's loose screws, and misaligned hinges, in addition to insufficient inspection, among other things, caused the accident. *Id.* at 448-49. This opinion was based in part on the expert's analysis of a display in a Home Depot store in Boston, Massachusetts, even though plaintiff was injured at a store in Ohio. *Id.* The *Davison* court upheld the district court's exclusion of the expert opinion because the

analysis of the Boston store did not create a reliable foundation to offer an opinion as to the cause of Norman's injuries. *Id.* at 449-50.

Much like the expert testimony in *Early* and *Davison*, Smith's testimony is unreliable because it lacks a sufficient basis in the factual record here. Smith's opinion was based on the erroneous assumption that the bolts were in the same place in November 2006 as they were in May 2006. Therefore, Smith's opinion does not rest on a "reliable foundation," rendering it inadmissible for this reason as well.

## CONCLUSION

Because the only expert testimony offered by Plaintiffs to establish defect and causation is inadmissible, the Court grants Defendant TRW's Motion for Summary Judgment.

IT IS SO ORDERED.

    s/ *Jack Zouhary*
JACK ZOUHARY
U. S. DISTRICT JUDGE

April 24, 2009